**FITAPELLI & SCHAFFER, LLP**
Joseph A. Fitapelli
Dana Cimera
28 Liberty St. 30th Floor
New York, NY 10005
Telephone: (212) 300-0375

**JOSEPHSON DUNLAP, LLP**
Michael A. Josephson (*Pro Hac Vice forthcoming*)
Andrew W. Dunlap (*Pro Hac Vice forthcoming*)
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Telephone: (713) 352-1100

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHNINE SUMPTER, Individually and for Others Similarly Situated, <br><br> v. <br><br> HOSPITALS CORPORATION d/b/a NYC HEALTH+HOSPITALS | Case No. 22 Civ. 8176 |

### ORIGINAL COLLECTIVE AND CLASS ACTION COMPLAINT

1.  Johnine Sumpter (Sumpter) brings this lawsuit to recover unpaid overtime wages and other damages from and Hospitals Corporation d/b/a NYC Health+Hospitals (H+H) under the Fair Labor Standards Act (FLSA) and the New York Labor Law (NYLL).

2.  During the relevant period, Defendant utilized the services of medical industry workers like Sumpter to work on its behalf.

3.  Sumpter and the other workers like her, who worked for, or on behalf of Defendant, regularly worked more than 40 hours per workweek.

4.  However, Sumpter and the other workers like her were not paid overtime.

5.  Instead, Defendant misclassified these workers as independent contractors and paid them the same hourly rate for all hours worked, including those in excess of 40 in a work week. ("straight time for overtime") with no overtime in violation of the FLSA and the NYLL.

6.  Sumpter brings this collective action to recover unpaid overtime and other damages.

7. Sumpter also brings this action on behalf of herself and all other similarly situated independent contractors paid straight time in New York pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") to remedy violations of the New York Labor Law, Article 6, §§ 190 et seq. ("NYLL").

## JURISDICTION AND VENUE

8. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b). This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the state law claims.

9. Venue is proper in this Court because Sumpter performed work for Defendant in this District and Division.

## THE PARTIES

10. Sumpter was an hourly employee of Defendant.

11. Throughout her employment, she was paid straight time for overtime.

12. Her written consent is attached as Exhibit A.

13. Sumpter brings this action on behalf of herself and all other similarly situated personnel who worked for, or on behalf of Defendant, who were classified as independent contractors and paid straight time for overtime.

14. Sumpter and the workers like her were paid the same hourly rate for every hour worked and did not receive overtime for all hours that they worked over 40 hours in a workweek in accordance with the FLSA.

15. First, Sumpter represents a class of similarly situated employees under the FLSA pursuant to 29 U.S.C. § 216(b). The FLSA class is defined as:

> **All medical industry personnel of Defendant who were, at any point in the past 3 years, paid "straight time for overtime" and classified as independent contractors (the "FLSA Class Members")**

2

16. Second, Sumpter represents a class of similarly situated employees under the NYLL pursuant to Federal Rule of Civil Procedure 23. The New York Class is defined as:

> **All New York staffed medical industry personnel of Defendant who were, at any point in the past 6 years and 228 days[1], paid "straight time for overtime" and classified as independent contractors (the "New York Class Members")**

17. Collectively, the FLSA Class Members and New York Class Members are referred to as the "Putative Class Members."

18. H+H is a public benefit corporation headquartered in New York City and may be served with process by serving the Secretary of the State of New York as its agent.

### COVERAGE UNDER THE FLSA

19. At all relevant times, Defendant was an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

20. At all relevant times, Defendant was an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

21. At all relevant times, Defendant was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as cell phones, computers, and personal protective equipment - that have been moved in or produced for commerce.

---

[1] The statute of limitations was tolled 228 days due to Governor Cuomo's Executive Order 202.8 (2020) and subsequent orders Executive Orders 202.14, 202.28, 202.38, 202.48, 202.55.1, 202.60, and 202.67. In total, the Executive Orders were effective and implemented tolling for 228 days, from March 20, 2020 until November 3, 2020. See McLaughlin v. Snowlift Inc., 71 Misc. 3d 1226(A) (Sup. Ct., Kings County 2021) (calculating that, together, the Executive Orders lasted 228 days).

22. At all relevant times, Defendant had an annual gross volume of sales made in excess of $500,000.

23. At all relevant times, Sumpter and the Putative Class Members (defined below) were engaged in commerce or in the production of goods for commerce.

24. At all relevant times hereinafter mentioned, Defendant treated Sumpter and the Putative Class Members as employees and applied their straight time for overtime pay practice to Sumpter and the Putative Class Members.

25. The misclassification of Sumpter and the Putative Class Members as independent contractors does not alter their status as employees for purposes of this FLSA collective action

## THE FACTS

26. H+H is one of the largest public health care systems in the United States and operates public hospitals and clinics through New York City as a public benefit corporation.

27. To provide these medical services, H+H hires workers like Sumpter.

28. Sumpter worked for H+H as a nurse practitioner.

29. During the height of the COVID-19 pandemic, Defendant hired Sumpter in June of 2020.

30. Sumpter worked for H+H in the New York area.

31. Sumpter was tasked with performing basic nursing duties such as caring for patients, checking vitals, administering first aid, and triaging patients.

32. Sumpter reported the hours she works to Defendant on a regular basis.

33. Defendant did not guarantee Sumpter a salary.

34. Sumpter was paid $135 for every approved hour worked.

35. If Sumpter worked fewer than 40 hours in a week, she was only paid only for the hours worked.

36. But Sumpter normally worked more than 40 hours in a week.

37. Sumpter was scheduled to work 12-hour shifts.

38. Sumpter routinely worked 6-7 days a week.

39. Sumpter worked 72 to 84 hours a week.

40. The hours Sumpter and the Putative Class Members' work are reflected in Defendant's records.

41. Defendant paid Sumpter at the same hourly rate for all hours worked, including those in excess of 40 in a workweek.

42. Throughout her employment, Defendant classified Sumpter as an independent contractor and paid her straight time for overtime.

43. Rather than receiving time and half as required by the FLSA and the NYLL, Sumpter only received "straight time" pay for overtime hours.

44. This "straight time for overtime" payment scheme violates the FLSA and the NYLL.

45. The work Sumpter performed is an essential part of Defendant's business, especially in light of the COVID-19 pandemic.

46. During Sumpter's employment with Defendant, Defendant exercised control over all aspects of her job.

47. Defendant did not require any substantial investment by Sumpter for her to perform the work required of her.

48. Defendant controlled Sumpter's opportunity for profit and loss by dictating the days and hours she works and the rate she is paid.

49. Defendant controlled all the significant or meaningful aspects of the job duties performed by Sumpter.

50. Defendant exercised control over the hours and locations Sumpter works, tools and

equipment she uses, and rates of pay she receives.

51. No real investment was required of Sumpter to perform her job.

52. More often than not, Sumpter utilized equipment provided by Defendant to perform her job duties.

53. Sumpter did not provide the significant equipment she works with on a daily basis. Defendant made the large capital investments in buildings, machines, equipment, tools, and supplies in the business in which Sumpter worked.

54. Sumpter did not incur operating expenses like rent, payroll, marketing, and insurance.

55. Sumpter has been and is economically dependent on Defendant during her employment.

56. Defendant set Sumpter's rates of pay, her work schedule, and effectively prevented (or outright prohibited) her from working other jobs for other companies while she is working on jobs for Defendant.

57. Defendant directly determined Sumpter's opportunity for profit and loss.

58. Sumpter's earning opportunity was based on the number of hours she worked for Defendant.

59. Indeed, the daily and weekly activities of Sumpter and the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created by Defendant.

60. Virtually every job function is pre-determined by Defendant, including the tools and equipment to use at a job site, the data to compile, the schedule of work, and related work duties.

61. The Putative Class Members are prohibited from varying their job duties outside of the pre-determined parameters and are required to follow Defendant's policies, procedures, and directives.

62. All of the Putative Class Members working for, or on behalf of Defendant, are subjected to the same or similar policies and procedures, which dictate the day-to-day activities performed by each person, regardless of the medical facility they were staffed to.

63. The Putative Class Members working for, or on behalf of Defendant, also work similar hours as Sumpter and were denied overtime as a result of the same illegal pay practice, regardless of the medical facility they were staffed to.

64. All of the Putative Class Members working for, or on behalf of Defendant, all work in excess of 40 hours each week and are often scheduled to work 12-hour shifts for weeks at a time, regardless of the medical facility they were staffed to.

65. Instead of paying them overtime, Defendant pays Sumpter and the Putative Class Members straight time for overtime and misclassified them as independent contractors.

66. Defendant denied Sumpter and the Putative Class Members overtime for hours worked in excess of 40 hours in a single workweek.

67. Sumpter and the Putative Class Members are not paid on a salary basis. They do not receive any guaranteed weekly compensation from Defendant irrespective of hours worked.

68. Because Sumpter and the Putative Class Members like her were misclassified as independent contractors by Defendant, they should receive overtime for all hours worked in excess of 40 hours in each workweek.

69. Defendant's straight time for overtime scheme violates the FLSA because Sumpter and the Putative Class Members like her did not receive any overtime pay for hours worked over 40 hours each week.

70. Defendant was and is aware of the overtime requirements of the FLSA.

71. Defendant nonetheless failed to pay certain hourly employees, such as Sumpter, overtime.

72. Sumpter and the Putative Class Members perform job duties in furtherance of the medical industry and are subjected to similar compensation practices.

73. Sumpter and the Putative Class Members also work similar hours and are denied overtime because of the same illegal pay practice.

74. Sumpter and the Putative Class Members regularly work in excess of 40 hours each week.

75. Defendant does not pay Sumpter and the Putative Class Members on a salary basis.

76. Defendant pays Sumpter and the Putative Class Members "straight time for overtime."

77. Defendant fails to pay Sumpter and the Putative Class Members overtime for hours worked in excess of 40 hours in a single workweek.

78. Defendant knew, or acted with reckless disregard for whether, Sumpter and the Putative Class Members are paid on a salary basis or were exempt from the FLSA overtime requirements.

79. Defendant's failure to pay overtime to these hourly workers was, and is, a willful violation of the FLSA.

### CLASS AND COLLECTIVE ACTION ALLEGATIONS

80. Defendant's illegal "straight time for overtime" policy extends beyond Sumpter.

81. The illegal pay practices Defendant imposed on Sumpter were likewise imposed on the Putative Class Members working for, or on behalf of, Defendant.

82. Numerous individuals were victimized by Defendant's pattern, practice, and policy which is in willful violation of the FLSA.

83. Based on her experiences and tenure with Defendant, Sumpter is aware that such illegal practices were imposed on the members of the Putative Class.

84. Sumpter and the Putative Class Members like her were all improperly classified as independent contractors and not afforded the overtime compensation when they worked in excess of forty hours per week.

85. Defendant's failure to pay wages and overtime compensation at the rates required by federal law result from generally applicable, systematic policies, and practices that are not dependent on the personal circumstances of any of the Putative Class Members like Sumpter.

86. Sumpter's experiences are therefore typical of the Putative Class Members who worked for, or on behalf of, Defendant.

87. The specific job titles or precise job locations of the various members of the Putative Class Members do not prevent collective treatment.

88. Sumpter has no interests contrary to, or in conflict with, the members of the Putative Class Members. Like each member of the Putative Class Members, Sumpter has an interest in obtaining the unpaid overtime wages owed under federal law.

89. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

90. Absent this action, the Putative Class Members likely will not obtain redress of their injuries and Defendant will reap the unjust benefits of violating the FLSA.

91. Furthermore, even if some of the Putative Class Members could afford individual litigation against Defendant, it would be unduly burdensome to the judicial system.

92. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the Putative Class Members and provide for judicial consistency.

93. Sumpter's claims are similar to the claims of the Putative Class Members who worked for, or on behalf of, Defendant who were classified as independent contractors and paid straight time

for overtime with no overtime compensation. Sumpter and the Putative Class Members sustained damages arising out of Defendant's illegal and uniform employment policy.

94. Sumpter knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

95. Even if the number of hours worked by the workers like Sumpter varies, the proof and method for calculating damages is common.

96. Further, there is no detraction from the common nucleus of liability facts.

97. The members of the New York Class are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

98. There are more than fifty members of the New York Class.

99. Sumpter's claims are typical of those claims that could be alleged by any member of the New York Class Members, and the relief sought is typical of the relief which would be sought by each member of the New York Class Members in separate actions.

100. Sumpter and the New York Class Members have all been injured in that they have been uncompensated, under-compensated, or untimely compensated due to Defendant's common policies, practices, and patterns of conduct. Defendant's corporate-wide policies and practices affected everyone in the New York Class Members similarly, and Defendant's benefited from the same type of unfair and/or wrongful acts as to each member of the New York Class Members.

101. Sumpter is able to fairly and adequately protect the interests of the New York Class and has no interests antagonistic to the New York Class.

102. Sumpter is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

103. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similar persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

104. Common questions of law and fact exist as to the New York Class Members that predominate over any questions only affecting Sumpter and/or each member of the New York Class individually and include, but are not limited to, the following:

   a. whether Defendant correctly compensated Plaintiff and the New York Class Members for hours worked in excess of 40 per workweek;

   b. whether Defendant failed to furnish Plaintiff and the New York Class Members with proper time of hire notices, as required by the NYLL; and

   c. whether Defendant failed to furnish Plaintiff and the New York Class Members with accurate statements with every payment of wages, as required by the NYLL.

### FIRST CAUSE OF ACTION – VIOLATION OF THE FLSA

105. Sumpter incorporates by reference all other paragraphs.

106. Defendant has violated, and are violating, section 7 of the FLSA, 29 U.S.C. § 207, by compensating hourly employees straight time for overtime in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than 40 hours without compensating the FLSA Class Members for their employment in excess of 40 hours per week at rates no less than 1.5 times the regular rates for which they were employed.

107. Defendant knowingly, willfully, or in reckless disregard carried out this illegal pattern and practice of failing to pay the FLSA Class Members overtime compensation.

108. Defendant's failure to pay overtime compensation to these FLSA Class Members was neither reasonable, nor was the decision not to pay overtime made in good faith.

109. Accordingly, Sumpter and the FLSA Class Members are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their rate of pay, plus liquidated damages, attorney's fees, and costs.

### SECOND CAUSE OF ACTION – FAILURE TO PAY WAGES UNDER THE NYLL

110. Sumpter incorporates by reference all other paragraphs.

111. Sumpter brings this case as a Rule 23 Class action for the New York Class Members consisting of "all New York Staffed medical industry personnel of Defendant who were, at any point in the past 3 years, paid "straight time for overtime" and classified as independent contractors."

112. Defendant fails to pay premium overtime wages to Sumpter and the New York Class Members in violation of New York Labor Law Articles 6 and 19 and their implementing regulations, including but not limited to 12 NYCRR Part 142.

113. Defendant's failure to pay proper premium overtime wages for each hour worked over 40 over week was willful within the meaning of New York Labor Law § 198.

114. Defendant's failure to comply with the NYLL minimum wage and overtime protections caused the New York Class Members to suffer loss of wages and interest thereon.

115. In light of Defendant's longstanding and ongoing violations of the NYLL and applicable regulations, Defendant's failure to pay current employees their wages due has caused and is causing irreparable injury to the New York Class Members who are currently employed by Defendant, and unless enjoined, will cause further irreparable injury, leaving the New York Class Members with no adequate remedy at law.

### THIRD CAUSE OF ACTION – FAILURE TO PROVIDE PROPER TIME OF HIRE NOTICE UNDER THE NYLL

116. Sumpter incorporates by reference all other paragraphs.

117. Defendant has failed to supply Plaintiff and the New York Class Members with a

proper time of hire wage notice, as required by NYLL, Article 6, § 195(1), in English or in the language identified as their primary language, at the time of hiring, containing, among other items: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; overtime rate; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

118. Due to Defendant's violations of NYLL, Article 6, § 195(1), Plaintiff and the New York Class Members are entitled to statutory penalties of fifty dollars for each workday that Defendant failed to provide them with wage notices, or a total of five thousand dollars each, as well as reasonable attorneys' fees and costs as provided for by NYLL, Article 6, § 198(1-b).

### FOURTH CAUSE OF ACTION – FAILURE TO PROVIDE PROPER ACCURATE WAGE STATEMENTS UNDER THE NYLL

119. Sumpter incorporates by reference all other paragraphs.

120. Defendant failed to supply Plaintiff and the New York Class Members with an accurate statement of wages with every payment of wages as required by NYLL, Article 6, § 195(3), listing: dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

121. Due to Defendant's violations of NYLL, Article 6, § 195(3), Plaintiff and the New York Class Members are entitled to statutory penalties of two hundred fifty dollars for each workday that Defendant failed to provide them with accurate wage statements, or a total of five thousand dollars each, as well as reasonable attorneys' fees and costs as provided for by NYLL, Article 6, § 198(1-d).

**RELIEF SOUGHT**

122. Sumpter prays for judgment against Defendant as follows:

   a. For an order certifying a class action under Rule 23 for the purposes of the claims under New York law;

   b. Designation of Plaintiff as representative of the New York Rule 23 Class and counsel of record as Class Counsel;

   c. For an order certifying this case as a collective action for the purposes of the FLSA claims;

   d. For an order finding Defendant liable for violations of state and federal wage laws with respect to Sumpter and all Class Members covered by this case;

   e. For a judgment awarding all unpaid wages, liquidated damages, and/or penalty damages, to Sumpter and all Class Members covered by this case;

   f. For a judgment awarding statutory penalties of fifty dollars for each workday that Defendant failed to provide Sumpter and the New York Class Members with proper time of hire wage notices, or a total of five thousand dollars each, as provided for by NYLL, Article 6 § 198;

   g. For a judgment awarding statutory penalties of two hundred fifty dollars for each workday that Defendant failed to provide Sumpter and the New York Class Members with accurate wage statements, or a total of five thousand dollars each, as provided for by NYLL, Article 6 § 198;

14

  h. For a judgment awarding Sumpter and all Class Members covered by this case their costs of this action;

  i. For a judgment awarding Sumpter and all Class Members covered by this case their attorneys' fees;

  j. For a judgment awarding Sumpter and all Class Members covered by this case pre- and post-judgment interest at the highest rates allowed by law; and

  k. For all such other and further relief as may be necessary and appropriate.

Dated: New York, New York
    September 23, 2022

        Respectfully submitted,

        */s/ Dana Cimera*
        Dana M. Cimera

        **FITAPELLI & SCHAFFER, LLP**
        Joseph A. Fitapelli
        Dana M. Cimera
        28 Liberty Street, 30th Floor
        New York, NY 10005
        Telephone: (212) 300-0375

        AND

        **Michael A. Josephson**\*
        Texas State Bar No. 24014780
        **Andrew Dunlap**\*
        Texas State Bar No. 24078444
        **JOSEPHSON DUNLAP, LLP**
        11 Greenway Plaza, Suite 3050
        Houston, Texas 77046
        713-352-1100 – Telephone
        713-352-3300 – Facsimile
        mjosephson@mybackwages.com
        adunlap@mybackwages.com
        *\*pro hac vice application forthcoming*

        AND

**Richard J. (Rex) Burch**\*
Texas State Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com
\**pro hac vice application forthcoming*

**ATTORNEYS IN CHARGE FOR PLAINTIFF**