**FITAPELLI & SCHAFFER, LLP**
Joseph A. Fitapelli
Dana Cimera
28 Liberty St. 30th Floor
New York, NY 10005
Telephone: (212) 300-0375

**JOSEPHSON DUNLAP, LLP**
Michael A. Josephson (Admitted *Pro Hac Vice*)
Andrew W. Dunlap (Admitted *Pro Hac Vice*)
Alyssa J. White (Admitted *Pro Hac Vice*)
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Telephone: (713) 352-1100

**BRUCKNER BURCH, PLLC**
Richard J. (Rex) Burch (Admitted *Pro Hac Vice*)
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Telephone: (713) 877-8788

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHNINE SUMPTER, Individually and for Others Similarly Situated,<br><br>v.<br><br>HOSPITALS CORPORATION d/b/a NYC HEALTH + HOSPITALS | Case No. 1:22-cv-08176-PAE<br><br>Jury Trial Demanded |

### SUMPTER'S MOTION & BRIEF IN SUPPORT OF HER MOTION FOR CONDITIONAL CERTIFICATION AND COURT-AUTHORIZED NOTICE

**<u>TABLE OF CONTENTS</u>**

**TABLE OF CONTENTS** ...............................................................................................**I**

TABLE OF AUTHORITIES .......................................................................................**II**

PRELIMINARY STATEMENT ................................................................................. **1**

FACTUAL BACKGROUND ...................................................................................... **2**

    A.    H+H's Business Operations Are Widespread Across New York City........................ 2

    B.    H+H Employed Sumpter and the Putative Class Members................................. 3

    C.    Sumpter and the Putative Class Members Typically Worked More Than 40 Hours Per Week and Were Paid Under The Same Illegal Straight Time for Overtime Pay Scheme...... 7

ARGUMENT ............................................................................................................ **8**

  I.    ARGUMENT & AUTHORITY AS TO CONDITIONAL CERTIFICATION................ 8

    A.    Sumpter and the Putative Class Members are Similarly Situated. ............................ 8

    B.    H+H Failed to Pay Sumpter and the Putative Class Members Overtime. .................... 8

    C.    Conditional Certification is Appropriate Because the Class is Similarly Situated....... 9

    D.    The Two-Step Certification Process for FLSA Collective Actions. ........................... 9

    E.    Sumpter Exceeds Her Minimal Burden............................................................... 12

    F.    Courts Routinely Conditionally Certify "Straight Time" Classes............................. 13

  II.    ARGUMENT AND AUTHORITY AS TO SUMPTER'S PROPOSED NOTICE ....... 15

    A.    Sumpter's Proposed Notice and Notice Procedure Are Appropriate. ....................... 15

    B.    A Three-Year Notice Period is Appropriate............................................................. 17

    C.    The Disclosure of Names and Contact Information is Appropriate. ........................ 17

CONCLUSION........................................................................................................ **18**

# TABLE OF AUTHORITIES

Page(s)

Cases

*Anglada v. Linens 'N Things, Inc.,*
  2007 WL 1552511 (S.D.N.Y. May 29, 2007) ....................................... 17
*Benavides v. Serenity Spa NY Inc.,*
  166 F. Supp. 3d 474 (S.D.N.Y. 2016) ................................................. 18
*Bouaphakeo v. Tyson Foods, Inc.,*
  765 F.3d 791 (8th Cir. 2014) ............................................................ 1
*Brown v. AvalonBay Communities, Inc.,*
  2019 WL 1507901 (E.D.N.Y. Mar. 29, 2019) ..................................... 16
*Bursell v. Tommy's Seafood Steakhouse,*
  2006 WL 3227334 (S.D. Tex. Nov. 3, 2006) ...................................... 14
*Cancino v. Janbar, Inc.,*
  2019 WL 4023638 (S.D.N.Y. Aug. 27, 2019) ..................... 1, 10, 11, 13
*Carter v. Indianapolis Power & Light Co.,*
  2003 WL 23142183 (S.D. Ind. Dec. 23, 2003) ................................... 14
*Chhab v. Darden Restaurants, Inc.,*
  2013 WL 5308004 (S.D.N.Y. Sept. 20, 2013) ............................... 11, 12
*Cohen v. Gerson Lehrman Grp., Inc.,*
  686 F. Supp. 2d 317 (S.D.N.Y. 2010) ................................................ 11
*Dybach v. State of Fla. Dep't of Corr.,*
  942 F.2d 1562 (11th Cir. 1991) ......................................................... 10
*Fasanelli v. Heartland Brewery, Inc.,*
  516 F. Supp. 2d 317 (S.D.N.Y. 2007) ........................................... 11, 17
*Ferreira v. Modell's Sporting Goods, Inc.,*
  2012 WL 2952922 (S.D.N.Y. July 16, 2012) ..................................... 12
*Gambino v. Harvard Prot. Servs. LLC,*
  2011 WL 102691 (S.D.N.Y. Jan. 11, 2011) ....................................... 15
*Garcia Ramos v. DNC Food Serv. Corp.,*
  2020 WL 2832776 (S.D.N.Y. June 1, 2020) ...................................... 18
*Gomez v. Loomis Armored US, LLC,*
  2017 WL 2999422 (W.D. Tex. Apr. 3, 2017) ..................................... 14
*Gonzalez v. CNL Wings VII, Inc.,* No. SA-14-CA-,
  2015 WL 10818674 (W.D. Tex. Mar. 24, 2015) ................................. 14
*Grant v. Warner Music Grp. Corp.,*
  2014 WL 1918602 (S.D.N.Y. May 13, 2014) ..................................... 12
*Hamadou v. Hess Corp.,*
  915 F. Supp.2d 651 (S.D.N.Y. 2013) ................................................. 16
*Hernandez v. Robert Dering Constr., LLC,*
  191 F. Supp. 3d 675 (S.D. Tex. 2016) ............................................... 14
*Hoffmann-La Roche Inc. v. Sperling,*
  493 U.S. 165 (1989) .......................................................................... 9
*Iglesias-Mendoza v. La Belle Farm, Inc.,*
  239 F.R.D. 363 (S.D.N.Y. 2007) ....................................................... 17

*In re Penthouse Executive Club Compensation Litigation,*
  2010 WL 4340255 (S.D.N.Y. Oct. 27, 2010) ........................................................ 18

*Islam v. LX Ave. Bagels, Inc.,*
  2019 WL 5198667 (S.D.N.Y. Sept. 30, 2019) ...................................................... 15

*Johnson v. Carlo Lizza & Sons Paving, Inc.,*
  160 F. Supp. 3d 605 (S.D.N.Y. 2016)................................................................. 17

*Julian v. MetLife, Inc.,*
  298 F. Supp. 3d 699 (S.D.N.Y. 2018)................................................................ 11

*Ke v. JR Sushi 2 Inc.,*
  2021 WL 465359 (S.D.N.Y. Feb. 9, 2021) ..................................................... 9, 11

*Klapatch v. BHI Energy Power Services, LLC,*
  2019 WL 859044 (D. Mass. Feb. 22, 2019) ........................................................ 13

*Klimchak v. Cardrona, Inc.,*
  2011 WL 1120463 (E.D.N.Y. Mar. 24, 2011) .................................................... 11

*Kuebel v. Black & Decker Inc.,*
  643 F.3d 352 (2d Cir. 2011) ............................................................................... 8

*Levinson v. Primedia Inc.,*
  2003 WL 22533428 (S.D.N.Y. Nov. 6, 2003) ................................................... 10

*Lijun Geng v. Shu Han Ju Rest. II Corp.,*
  2019 WL 4493429 (S.D.N.Y. Sept. 9, 2019) ...................................................... 16

*Lynch v. United Servs. Auto. Ass'n,*
  491 F. Supp. 2d 357 (S.D.N.Y. 2007).............................................................. 10

*Man Fan v. Ping's on Mott, Inc.,*
  2014 WL 1512034 (S.D.N.Y. Apr. 14, 2014) .............................................. 9, 18

*Martin v. Sprint/United Mgm't Co.,*
  2016 WL 30334 (S.D.N.Y. Jan. 4, 2016) ............................................ 10, 11, 15, 16

*McGlone v. Contract Callers, Inc.,*
  867 F. Supp. 2d 438 (S.D.N.Y. 2012)................................................................ 11

*Miranda v. General Auto Body Works, Inc.,*
  2017 WL 4712218 (E.D.N.Y. Oct. 18, 2017) ...................................... 11, 16, 18

*Morris v. Lettire Const., Corp.,*
  896 F. Supp. 2d 265 (S.D.N.Y. 2012).............................................. 10, 13, 16

*Myers v. Hertz Corp.,*
  624 F.3d 537 (2d Cir. 2010) ...................................................................... Passim

*Portilla v. Bridgehampton Stone, Inc.,*
  2019 WL 1128364 (E.D.N.Y. Mar. 12, 2019) .................................................. 16

*Raniere v. Citigroup Inc.,*
  827 F. Supp. 2d 294 (S.D.N.Y. 2011).............................................................. 17

*Rodolico v. Unisys Corp.,*
  199 F.R.D. 468 (E.D.N.Y. 2001) .................................................................... 10

*Schaefer v. M & T Bank Corp.,*
  122 F.Supp.3d 189 (S.D.N.Y. 2015)................................................................ 12

*Sobczak v. AWL Indus., Inc.,*
  540 F.Supp.2d 354 (E.D.N.Y.2007) ................................................................ 12

*Taylor v. R.J.T. Motorist Serv., Inc.,*
  2020 WL 4937483 (S.D.N.Y. Aug. 24, 2020) ................................................. 16

*Uraga v. Amici 519 LLC,*
  2018 WL 3579850 (S.D.N.Y. July 25, 2018) ................................................... 13

iii

*Vargas v. Richardson Trident Co.*, No. CIV.A.,
  2010 WL 730155 (S.D. Tex. Feb. 22, 2010) ................................................................ 14

*Vasto v. Credico (USA) LLC*,
  2016 WL 2658172 (S.D.N.Y. May 5, 2016) .......................................................... Passim

*Velazquez v. FPS LP*,
  2014 WL 3843639 (S.D. Tex. Aug. 4, 2014) ............................................................... 14

*Wellman v. Grand Isle Shipyard, Inc.*,
  2014 WL 5810529 (E.D. La. Nov. 7, 2014) ................................................................ 14

*Zhongle Chen v. Kicho Corp.*,
  2020 WL 1900582 (S.D.N.Y. Apr. 17, 2020) .............................................................. 18

## Statutes

29 U.S.C. § 207(a) ....................................................................................................................8

29 U.S.C. § 216(b) ....................................................................................................................9

29 U.S.C. § 255(a) ..................................................................................................................17

## PRELIMINARY STATEMENT

Johnine Sumpter (Sumpter) filed this class and collective action on behalf of herself and other medical personnel who worked for the Hospitals Corporation d/b/a NYC Health + Hospitals (H+H), were classified as independent contractors, and paid the same hourly rate for all hours worked, including for those hours worked over 40 in a single week. *See* Exhibit 1, Declaration of Johnine Sumpter, at ¶¶ 6-7, 10-13, 28-29; Exhibit 2, Declaration of Andrea George, at ¶¶ 10-13, 21, 28-31; Exhibit 3, Declaration of Patricia Anthony Yearwood, at ¶¶ 9-14, 29-32; Exhibit 4, Declaration of Patricia Eliacin, at ¶¶ 9-14, 29-32; *see also* Doc. 49 at *3. Sumpter claims H+H subjected her and other medical personnel to a common and illegal practice of misclassifying them as independent contractors and compensating them with less than the required "time and a half" for those hours worked over 40 in a week. *Id.*; s*ee also Bouaphakeo v. Tyson Foods, Inc.*, 765 F.3d 791, 796 (8th Cir. 2014), *aff'd and remanded,* 577 U.S. 442 (2016) ("Plaintiffs may be similarly situated when "they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs."); *Cancino v. Janbar, Inc.*, No. 18 Civ. 7219 (PAE), 2019 WL 4023638, at *3 (S.D.N.Y. Aug. 27, 2019) (Engelmayer, J.) (conditionally certifying nationwide class of workers paid "straight time for overtime"); *Vasto v. Credico (USA) LLC*, No. 15 Civ. 9298 (PAE), 2016 WL 2658172, at *1 (S.D.N.Y. May 5, 2016) (Engelmayer, J.) (conditionally certifying nationwide class of workers classified as independent contractors).

Through this motion, Sumpter seeks to protect her rights and the rights of other medical personnel employed by H+H who were classified as independent contractors and paid the same hourly rate for all hours worked by sending them early Court-approved notice of this Action to allow them to join this Action and attempt to recover their unpaid wages. Specifically, Sumpter moves for conditional certification and Court-approved notice to be sent (via mail, email, and text message) to:

> **All medical industry personnel working for, or on behalf of, H+H who were, at any point in the past three years classified as independent contractors and paid "straight time for overtime" (the Putative Class Members).**

Through Sumpter's Complaint and the declarations submitted as Exhibits hereto, Sumpter exceeds her minimal burden to show that H+H subjected her and the Putative Class Members to the same unlawful classification and compensation policies alleged to violate the FLSA.

## FACTUAL BACKGROUND

**A.    H+H's Business Operations Are Widespread Across New York City.**

H+H is the largest municipal healthcare provider in the United States, and provides access to health services for a large portion of New York City inhabitants, across eleven hospitals and 35 other healthcare facilities.[1] To staff medical personnel such that it can provide patient care to such a large population, H+H partners with staffing companies. Ex. 1 at ¶¶ 6-7, 31; Ex. 2 at ¶¶ 6-7, 31; Ex. 3 at ¶¶ 6-7, 31; Ex. 4 at ¶¶ 6-7, 31. H+H retains staffing companies to locate qualified candidates for H+H, after which H+H employs said candidates and dictates all employment terms for these nurses, nurse practitioners, nurse aides, techs, and other medical personnel. Ex. 1 at ¶¶ 3, 5, 6, 9, 12, 15-19; Ex. 2 at ¶¶ 3, 5, 6, 9, 12, 15-19; Ex. 3 at ¶¶ 3, 5, 6, 9, 12, 15-19; Ex. 4 at ¶¶ 3, 5, 6, 9, 12, 15-19.  H+H then routes these employees' pay through staffing companies, all while H+H serves as their employer. Ex. 1 at ¶¶ 5-9; Ex. 2 at ¶¶ 5-9; Ex. 3 at ¶¶ 5-9; Ex. 4 at ¶¶ 5-9. H+H's general pay practice is to pay its staffed workers straight time for overtime for hours worked over 40, instead of paying overtime compensation at 1.5 times their regular rate of pay as required by the FLSA. Ex. 1 at ¶¶ 9-11, 30-31; Ex. 2 at ¶¶ 9-11, 30-31; Ex. 3 at ¶¶ 9-11, 30-31; Ex. 4 at ¶¶ 9-11, 30-31.

---

[1] *See generally* https://www.nychealthandhospitals.org/about-nyc-health-hospitals/ (last visited December 1, 2022).

**B.      H+H Employed Sumpter and the Putative Class Members.**

H+H classified Sumpter and the Putative Class Members as independent contractors. Doc. 1 at ¶ 5; Doc. 49 at *3. However, in all relevant ways, H+H acts and serves as the employer of Sumpter and the Putative Class Members. Ex. 1 at ¶¶ 3, 5, 6, 9, 12, 15-19; Ex. 2 at ¶¶ 3, 5, 6, 9, 12, 15-19; Ex. 3 at ¶¶ 3, 5, 6, 9, 12, 15-19; Ex. 4 at ¶¶ 3, 5, 6, 9, 12, 15-19.

For example, when Sumpter was hired to work for H+H, H+H personnel provided her onboarding and conducted her new hire orientation at her designated worksite. Ex. 1 at ¶ 5. H+H further dictated the facility and work location to which Sumpter reported, and could – and did – require her to change work locations. *Id.* at ¶ 20. During Sumpter's employment with H+H, her direct supervisor was always a H+H employee. *Id.* at ¶ 23. If Sumpter was going to be absent from work, she had to notify her H+H supervisor. *Id.* H+H dictated the personal protective equipment ("PPE") that its medical industry personnel were required to wear, and provided said PPE to Sumpter and her colleagues. *Id.* at 26.

H+H also controlled all aspects of Sumpter's hours and pay. For instance, H+H controlled the number of hours Sumpter was permitted (or required) to work each week. *Id.* at ¶ 12. H+H required Sumpter to submit her timesheets to H+H employees for approval and review, and these H+H employees could and did manually modify Sumpter's time and pay. *Id.* at ¶¶ 14-16. H+H controlled how Sumpter was paid, and subjected her to its straight time for overtime pay practice. *Id.* at ¶¶ 11-13.

H+H's exercise of control was not specific to Sumpter. Opt-In Plaintiff Andrea (Dkt. 17) also experienced H+H's level of complete control. When George was hired to work for H+H, H+H personnel provided her onboarding and conducted her new hire orientation at her designated worksite. Ex. 2 at ¶ 5. H+H further dictated the facility and work location to which George reported, and could – and did – require her to change work locations. *Id.* at ¶ 20. During George's employment

with H+H, her direct supervisor was always a H+H employee. *Id.* at ¶ 23. If George was going to be absent from work, she had to notify her H+H supervisor. *Id.* H+H dictated the personal protective equipment ("PPE") that its medical industry personnel were required to wear, and provided said PPE to George and her colleagues. *Id.* at 26.

As with Sumpter, H+H also controlled all aspects of George's hours and pay. For instance, H+H controlled the number of hours George was permitted (or required) to work each week. *Id.* at ¶ 12. H+H required George to submit her timesheets to H+H employees for approval and review, and these H+H employees could and did manually modify George's time and pay. *Id.* at ¶¶ 14-15. H+H controlled how George was paid, and subjected her to its straight time for overtime pay practice. *Id.* at ¶¶ 11-13.

H+H exercised similar complete control over declarants Yearwood and Eliacin, as well as other medical professionals similarly situated to Sumpter, George, Yearwood, and Eliacin. Like Sumpter and George, Yearwood and Eliacin received their onsite training and orientation directly from H+H, not from staffing companies. Ex. 3 at ¶ 5; Ex. 4 at ¶ 5. H+H dictated the work schedules of Yearwood and Eliacin. Ex. 3 at ¶ 6; Ex. 4 at ¶ 6. H+H further mandated the number of hours they were required to work for H+H per week. Ex. 3 at ¶ 12-13; Ex. 4 at ¶ 12. H+H had to approve, authorize, and approve timesheets for Yearwood and Eliacin before they could be paid, and H+H had the authority to modify their submitted time (and, by extension, their pay). Ex. 3 at ¶ 15; Ex. 4 at ¶ 15. H+H determined the work locations of Yearwood and Eliacin, and H+H could – and did – direct them to change work locations at whim. Ex. 3 at ¶¶ 4, 20; Ex. 4 at ¶¶ 4, 20. Yearwood and Eliacin reported directly to H+H supervisors, from whom they had to obtain advance approval for excused absences. Ex. 3 at ¶ 23; Ex. 4 at ¶ 23.

In essence, H+H controlled all aspects of its employment of Sumpter, George, Yearwood, and Eliacin (the "Declarants"), as well as those similarly situated to them. Ex. 1 at ¶¶ 3, 5, 6, 9, 12, 15-

4

19; Ex. 2 at ¶¶ 3, 5, 6, 9, 12, 15-19; Ex. 3 at ¶¶ 3, 5, 6, 9, 12, 15-19; Ex. 4 at ¶¶ 3, 5, 6, 9, 12, 15-19.

H+H kept and maintained records and emails relating to their employment with H+H. Ex. 1 at ¶¶

14-17; Ex. 2 at ¶¶ 14-17; Ex. 3 at ¶¶ 14-17; Ex. 4 at ¶¶ 14-17. H+H required the Declarants and the

Putative Class Members to adhere to strict operating procedures and protocols, thereby depriving

them of any opportunity to exercise discretion and independent judgment. Ex. 1 at ¶ 19; Ex. 2 at ¶ 19;

Ex. 3 at ¶ 19; Ex. 4 at ¶ 19. The work that the Declarants and the Putative Class Members performed

was an integral part of H+H's business. Ex. 1 at ¶ 24; Ex. 2 at ¶ 24; Ex. 3 at ¶ 24; Ex. 4 at ¶ 24.. During

their employment with H+H, H+H provided all tools, equipment, PPE, and facilities the Declarants

required to perform their work. Ex. 1 at ¶ 26; Ex. 2 at ¶ 26; Ex. 3 at ¶ 26; Ex. 4 at ¶ 26. During their

employment with H+H, the Declarants only worked for H+H, were financially dependent on H+H,

and relied on H+H as their employer. Ex. 1 at ¶¶ 3, 25; Ex. 2 at ¶¶ 3, 25; Ex. 3 at ¶¶ 3, 25; Ex. 4 at ¶¶

3, 25. These circumstances of employment were not unique to the Declarants nor to a limited number

of H+H locations; rather, these circumstances were typical of H+H's employment of medical

personnel; as established by the Declarants, this was true at H+H's Midwood Hospital location, its

Gotham East/East New York location, its New York Department of Corrections Queens location,

its Brooklyn Army Terminal location, its North Central Bronx location, its Bensonhurst location, and

its numerous other locations across Manhattan, Queens, Brooklyn, and the Bronx. Ex. 1 at ¶ 5; Ex. 2

at ¶ 5; Ex. 3 at ¶ 5; Ex. 4 at ¶ 5.

Based on the experience and familiarity the Declarants have with the duties of other H+H

workers, and based on their interaction with H+H colleagues, the Declarants have firsthand

knowledge that the same is true for the Putative Class Members. *See generally* Exs. 1-4.

Like the Declarants, the Putative Class Members worked for H+H as employees. Like the

Declarants, the Putative Class Members were subject to H+H's control over all aspects of their

employment with H+H. Ex. 1 at ¶¶ 9, 19, 21, 24, 26-27, 32-33; Ex. 2 at ¶¶ 9, 19, 21, 24, 26-27, 32-33;

Ex. 3 at ¶¶ 9, 19, 21, 24, 26-27, 32-33; Ex. 4 at ¶¶ 9, 19, 21, 24, 26-27, 32-33. Like Sumpter, the Putative Class Members were subject to H+H's straight time for overtime pay scheme. Ex. 1 at ¶¶ 9-11, 28-31; Ex. 2 at ¶¶ 9-11, 28-31; Ex. 3 at ¶¶ 9-11, 28-31; Ex. 4 at ¶¶ 9-11, 28-31. In addition, H+H controlled the number of hours the Putative Class Members were permitted (or required) to work, and what they did during those working hours. Ex. 1 at ¶¶ 7, 21, 28, 30; Ex. 2 at ¶¶ 7, 21, 28, 30; Ex. 3 at ¶¶ 7, 21, 28, 30; Ex. 4 at ¶¶ 7, 21, 28, 30. Like the Declarants, the Putative Class Members were subjected to PPE requirements, and were required to adhere to H+H's strict operating procedures, which allow for little (or no) independent interpretation or judgment. Ex. 1 at ¶¶ 19, 26; Ex. 2 at ¶¶ 19, 26; Ex. 3 at ¶¶ 19, 26; Ex. 4 at ¶¶ 19, 26.

Furthermore, while there may be variations among the specific tasks performed by the Putative Class Members', all the Putative Class Members were involved patient care, and COVID-related duties such as COVID testing and vaccine administration, and were required to provide patient care services pursuant to H+H protocols and policies. Ex. 1 at ¶¶ 21, 28; Ex. 2 at ¶¶ 21, 28; Ex. 3 at ¶¶ 21, 28; Ex. 4 at ¶¶ 21, 28. The work the Putative Class Members performed was an integral part of H+H's business, without which H+H would not be able to effectively operate or function. Ex. 1 at ¶ 24; Ex. 2 at ¶ 24; Ex. 3 at ¶ 24; Ex. 4 at ¶ 24. And all Putative Class Members are subject to the same uniform pay policy violative of the FLSA's overtime requirements. Ex. 1 at ¶¶ 11, 28-31; Ex. 2 at ¶¶ 11, 28-31; Ex. 3 at ¶¶ 11, 28-31; Ex. 4 at ¶¶ 11, 28-31.

In light of the foregoing, Sumpter has demonstrated that the proposed Putative Class Members are similar in employment experiences, hours, and pay.

C.    **Sumpter and the Putative Class Members Typically Worked More Than 40 Hours Per Week and Were Paid Under The Same Illegal Straight Time for Overtime Pay Scheme**

Sumpter and the Putative Class Members regularly worked more than 40 hours a week. Ex. 1 at ¶¶ 7, 12, 30, 32; Ex. 2 at ¶¶ 7, 12, 30, 32; Ex. 3 at ¶¶ 7, 12, 30, 32; Ex. 4 at ¶¶ 7, 12, 30, 32. In fact, at H+H's direction, Sumpter and the Putative Class Members frequently worked 45-80 hours per week and sometimes all seven (7) days per week. *Id.* H+H is aware of its' workers hours, including those of Sumpter and the Putative Class Members, because H+H is in control of their schedules. *Id.* Despite requiring Sumpter and the Putative Class Members to regularly work more than 40 hours per week, H+H did not pay overtime compensation at one and one half (1.5) times the regular hourly rate of pay, electing instead to pay only straight time for hours worked over forty (40) hours in a week. Ex. 1 at ¶¶ 11, 28-31; Ex. 2 at ¶¶ 11, 28-31; Ex. 3 at ¶¶ 11, 28-31; Ex. 4 at ¶¶ 11, 28-31. Regardless of the nuances of their employment with H+H, the Putative Class Members are all paid straight time for overtime in violation of the FLSA. Ex. 1 at ¶¶ 9-11, 28-33; Ex. 2 at ¶¶ 9-11, 28-33; Ex. 3 at ¶¶ 9-11, 28-33; Ex. 4 at ¶¶ 9-11, 28-33. Moreover, H+H's straight time for overtime pay practice is not limited to one worksite, one client, or one location, but is broadly applied to workers across the universe of H+H worksites. *Id.*

The decisions and actions taken by H+H are part of a widespread pattern and practice of abuse to which Sumpter and all those who are similarly situated have been subjected to for years. H+H's conduct as described above occurred regardless of the time period, client, project, worksite, staffing company, or individual supervisor. Even if the actual tasks which were performed by these Putative Class Members may vary slightly from person to person, or the specific hours worked may differ slightly, the illegal policy remains the same—H+H's current and former workers who were paid straight time for overtime have not been properly compensated in accordance with the FLSA.

Sumpter presents strong evidence of the nexus between the alleged FLSA violations and the affected Putative Class Members that the Court should rely upon in conditionally certifying this collective action.

## ARGUMENT

### I.    ARGUMENT & AUTHORITY AS TO CONDITIONAL CERTIFICATION

#### A.    Sumpter and the Putative Class Members are Similarly Situated.

In the instant case, Sumpter and the Putative Class Members are similarly situated because they all: (1) worked for, or on behalf of, H+H as medical personnel; (2) were classified as independent contractors; (3) regularly worked more than 40 hours each week; (4) were paid hourly; (5) received the same hourly rate for all hours worked, including for those hours worked in excess of 40 hours in a week; and (6) were all required or permitted to work overtime without receiving compensation at the legal rate of pay.

Sumpter more than meets the lenient standard of showing that notice to the Putative Class Members is appropriate. The substantial evidence attached to this Motion confirms the nature of H+H's policy of misclassifying certain medical personnel as independent contractors and failing to pay them overtime as required by the FLSA.

#### B.    H+H Failed to Pay Sumpter and the Putative Class Members Overtime.

H+H systematically failed to pay Sumpter and the Putative Class Members overtime pay at 1.5 times their regular rate of pay for all hours worked over 40 in a work week. Under the FLSA, an employer must pay its employees an overtime premium of 1.5 times their regular rate of pay when they work over 40 hours in a single week.  29 U.S.C. § 207(a). "To establish liability under the FLSA on a claim for unpaid overtime, a plaintiff must prove that [he or she] performed work for which [he or she] was not properly compensated, and that the employer had actual or constructive knowledge of that work." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011).

8

As discussed, H+H misclassified certain patient care workers as independent contractors and paid them the same hourly rate for all hours worked without proper overtime compensation, regardless of the number of hours worked each day or each week in order to escape the requirements of the FLSA. Ex. 1 at ¶¶ 9-11, 28-33; Ex. 2 at ¶¶ 9-11, 28-33; Ex. 3 at ¶¶ 9-11, 28-33; Ex. 4 at ¶¶ 9-11, 28-33.

**C.    Conditional Certification is Appropriate Because the Class is Similarly Situated.**

The FLSA authorizes aggrieved employees to bring a collective action "on behalf of themselves and other employees similarly situated." 29 U.S.C. § 216(b); *Ke v. JR Sushi 2 Inc.*, No. 19 Civ. 7332 (PAE) (BCM), 2021 WL 465359, at *1 (S.D.N.Y. Feb. 9, 2021) (Engelmayer, J.). Unlike a class action pursuant to FED. R. CIV. P. 23, an employee in a collective action brought under the FLSA is not a class member until he or she affirmatively opts-in to the collective action. 29 U.S.C. § 216(b). Thus, until similarly situated employees file consents to opt-in to this Action, the statute of limitations continues to run against them daily. Therefore, it is critical that similarly situated employees are afforded notice and an opportunity to opt-in as soon as possible before their claims are reduced or extinguished by the passage of time.

**D.    The Two-Step Certification Process for FLSA Collective Actions.**

Courts in this Circuit use a two-step method to assess whether to certify a collective action. *Myers v. Hertz Corp.*, 624 F.3d 537, 554-55 (2d Cir. 2010); *Ke*, 2021 WL 465359, at *1; *see also Man Fan v. Ping's on Mott, Inc.*, No. 13 Civ. 4939 (AT), 2014 WL 1512034, at *1 (S.D.N.Y. Apr. 14, 2014) (*citing Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989)).

First, usually early in litigation, the court determines whether a collective action should be conditionally certified for the purposes of sending judicial notice and conducting discovery. *Myers*, 624 F.3d at 554-55. A plaintiff need only make a "modest factual showing" that she and the other potential claimants were victims of a common policy or plan alleged to violate the FLSA. *Ke*, 2021 WL 465359,

at *1 (citing *Myers*, 624 F.3d at 555); *Cancino*, 2019 WL 4023638, at *3 (plaintiff meets her "modest burden of showing that prospective members of the collective are similarly situated" by alleging "defendants had a unitary policy and practice of failing to pay overtime for non-exempt hourly workers[.]").

In other words, a plaintiff need only make some "factual showing" the allegedly illegal practice extends beyond their own circumstances. *Vasto*, 2016 WL 2658172, at *9 ("To justify conditional certification, plaintiffs must make a 'modest factual showing' of a 'factual nexus' that binds all members of the proposed collective together as victims of a common unlawful practice."); *Levinson v. Primedia Inc.*, No. 02 Civ 2222 (CBM), 2003 WL 22533428, at *2 (S.D.N.Y. Nov. 6, 2003).

And courts in this District (including this Court) have held that "[w]here plaintiffs allege such idiosyncratic conduct across multiple [locations/subcontractors], it is reasonable to infer that the same pattern of behavior occurred at defendants' other [locations/subcontractors]." *Vasto*, 2016 WL 2658172, at *10 (quoting *Morris v. Lettire Const., Corp.*, 896 F. Supp. 2d 265, 270-71 (S.D.N.Y. 2012) (plaintiffs' uniform allegations that they received "purely 'straight time' pay in the same distinctive manner ... no matter where they worked or who supervised them" supported "a reasonable inference that plaintiffs' experiences reflected a company-wide policy."). Moreover, that potential opt-in plaintiffs held different jobs, in different departments, at different locations does not preclude conditional certification when all were subject to the same allegedly unlawful policy. *Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 483 (E.D.N.Y. 2001).

A plaintiff's burden to meet his burden for conditional certification at the notice stage is "very low." *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007). That's because "the purpose of this first stage is merely to determine whether 'similarly situated' plaintiffs do in fact exist." *Martin v. Sprint/United Mgm't Co.*, No. 15 Civ. 5237 (PAE), 2016 WL 30334, at *4 (S.D.N.Y. Jan. 4, 2016) (Engelmayer, J.) (citing *Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1567 (11th Cir. 1991)).

It is inappropriate at this preliminary stage for a court to make factual determinations on the merits. *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 322 (S.D.N.Y. 2007); *Martin*, 2016 WL 30334, at *4 ("A court need not evaluate the underlying merits of a plaintiff's claims to determine whether the plaintiff has made the minimal showing necessary for court-authorized notice."). As such, "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Klimchak v. Cardrona, Inc.*, No. CV-09-04311 SJF ARL, 2011 WL 1120463, at *5 (E.D.N.Y. Mar. 24, 2011). So, for example, courts do not weigh the evidentiary value of competing affidavits. *Cohen v. Gerson Lehrman Grp., Inc.*, 686 F. Supp. 2d 317, 330 (S.D.N.Y. 2010); *Vasto*, 2016 WL 2658172, at *15. And plaintiffs may rely on their own affidavits (even a single affidavit), based on personal observations and hearsay. *Julian v. MetLife, Inc.*, 298 F. Supp. 3d 699, 702 (S.D.N.Y. 2018); *Ke*, 2021 WL 465359, at *2.

In the second stage, after discovery, H+H may move the Court to decertify the collective action, should evidence later reveal the recruiters are not "similarly situated." *See Myers*, 624 F.3d at 554; *Cancino*, 2019 WL 4023638, at *3.

This case is at the initial stage. Sumpter is seeking conditional certification for purposes of discovery and judicial notice. "Generally, the court examines 'whether putative plaintiffs are similarly situated at an early 'notice stage' and then again after discovery is largely complete.'" *Miranda v. General Auto Body Works, Inc.*, No. 17 Civ. 04116 (AMD)(RER), 2017 WL 4712218, at *1 (E.D.N.Y. Oct. 18, 2017) (quoting *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 442 (S.D.N.Y. 2012); *see also Chhab v. Darden Restaurants, Inc.*, No. 11 Civ. 8345 (NRB), 2013 WL 5308004, at *9 (S.D.N.Y. Sept. 20, 2013). As such, plaintiffs need only "make a modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law." *Miranda*, 2017 WL 4712218, at * 1 (quoting *Myers*, 624 F.3d at 554). The factual showing for conditional certification is a "lenient one" *Miranda*, 2017 WL 4712218, at * 1 (citing *McGlone*, 867 F. Supp. 2d at 443). This minimal burden

can be satisfied by "the pleadings, affidavits, and affidavits of potential members of the collective action." *Grant v. Warner Music Grp. Corp.*, No. 13 Civ 4449, 2014 WL 1918602, at *3 (S.D.N.Y. May 13, 2014).

"[T]he Second Circuit has emphasized that the standard of proof should remain "low" because "the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist.'" *See Chhab*, 13 WL 5308004, at *10. (*citing Myers*, 624 F.3d at 555; *Schaefer v. M & T Bank Corp.*, 122 F.Supp.3d 189, 193 (S.D.N.Y. 2015) (stating that the "[p]laintiff's burden is minimal because the determination that the parties are similarly situated is merely a preliminary one"). Reaching this burden "does not require proof of an actual FLSA violation," but only requires a "factual nexus between the plaintiff's situation and the situation of other potential plaintiffs." *Serebryakov*, 181 F. Supp. 3d at 173 (quoting *Sobczak v. AWL Indus., Inc.*, 540 F.Supp.2d 354, 362 (E.D.N.Y.2007)). Rather, if the court finds that similarly situated potential plaintiffs exist, "the Court should conditionally certify the class, order that appropriate notice be given to putative class members, and the action should continue as a 'collective action throughout the discovery process.'" *Ferreira v. Modell's Sporting Goods, Inc.*, No. 11 Civ. 2395 (DAB), 2012 WL 2952922, at *2 (S.D.N.Y. July 16, 2012).

### E.    Sumpter Exceeds Her Minimal Burden.

Sumpter has made a strong preliminary showing, through her Complaint and through the declarations submitted in support of the instant motion, that H+H subjected her and the Putative Class Members to the same classification and compensation policies, and that these policies violated the FLSA. *See generally* Dkt. 1; Exs. 1-4. Through this evidence, Sumpter has shown enough to demonstrate a reasonable inference that she and other medical personnel working for, or on behalf of, H+H throughout New York state were misclassified as independent contractors and denied overtime pursuant to a uniform plan. *Id.*

Here, Sumpter is similarly situated to the Putative Class Members because they were all subject to a common, illegal compensation plan. Specifically, Sumpter and the Putative Class Members are similarly situated because they all: (1) worked for, or on behalf of, H+H as medical personnel; (2) were classified as independent contractors; (3) regularly worked more than 40 hours each week; (4) were paid hourly; (5) received the same hourly rate for all hours worked, including for those hours worked in excess of 40 hours in a week; and (6) were all required or permitted to work overtime without receiving compensation at the legal rate of pay. Ex. 1 at ¶¶ 2-3; 8-12, 28-33; Ex. 2 at ¶¶ 2-3; 8-12, 28-33; Ex. 3 at ¶¶ 2-3; 8-12, 28-33; Ex. 4 at ¶¶ 2-3; 8-12, 28-33.  Accordingly, the Court should find that Sumpter is similarly situated to the Putative Class Members.

Finally, Sumpter presents evidence, not only in support of the Putative Class Members being similarly situated, but also that these class members similarly situated to Sumpter do and would wish to pursue their potential claims against H+H if so notified. Ex. 1 at ¶¶ 30-34; Ex. 2 at ¶¶ 30-34; Ex. 3 at ¶¶ 30-34; Ex. 4 at ¶¶ 30-34. Indeed, several other similarly situated individuals have already opted in to participate in the instant lawsuit. Docs. 17, 76, 78. Additional such similarly situated class members who will be interested to learn of their rights and opportunity to pursue these potential claims against H+H, and are so entitled to learn of these rights and opportunity.

**F.    Courts Routinely Conditionally Certify "Straight Time" Classes.**

A uniform pay practice justifies conditional certification, particularly a scheme that is recognized as evading the FLSA's requirements. And courts throughout the Country—including this Court—routinely grant conditional certification in cases where defendants paid workers according to a common "straight time for overtime" pay practice that deprived them of overtime compensation under the FLSA. *See, e.g.*, *Morris*, 896 F. Supp. 2d at 270-71; *Cancino*, 2019 WL 4023638, at *3; *Uraga v. Amici 519 LLC*, No. 1:17-cv-03547 (ALC), 2018 WL 3579850, at *5 (S.D.N.Y. July 25, 2018); *see also Klapatch v. BHI Energy Power Services, LLC*, No. 18-CV-11581, 2019 WL 859044 (D. Mass. Feb. 22,

2019) (certifying a nationwide class of straight time for overtime workers); *Bowser v. Duke Energy, et al.*, No. 2:16-CV-00482, Doc. 60 (W.D. Pa. Mar. 30, 2018) (conditionally certifying class of hourly employees paid straight time for overtime with one plaintiff); *Terry v. Chicago Bridge & Iron Co.*, No. 4:17-CV-00367, Doc. 108 (S.D. Tex. March 8, 2018) (same); *Cantrell v. Lutech Resources Inc.*, No. 4:17-CV-2679, Doc. 21 (S.D. Tex. Feb. 9, 2018) (same); *Salinas v. Wood Group PSN Commissioning Servs., Inc.*, No. 2:17-CV-177, Doc. 34 (S.D. Tex. Dec. 26, 2017) (conditionally certifying class of nationwide oilfield personnel paid straight time for overtime); *Gomez v. Loomis Armored US, LLC*, No. SA-16-CA-00931-DAE, 2017 WL 2999422, at *5-6 (W.D. Tex. Apr. 3, 2017) (certifying class of armored guards paid straight-time for overtime); *Hernandez v. Robert Dering Constr., LLC*, 191 F. Supp. 3d 675, 684 (S.D. Tex. 2016) (conditionally certifying class of construction workers paid straight time for overtime); *Gonzalez v. CNL Wings VII, Inc.*, No. SA-14-CA-886-OLG, 2015 WL 10818674, at *7 (W.D. Tex. Mar. 24, 2015) (certifying a class of cooks paid straight time for overtime); *Wellman v. Grand Isle Shipyard, Inc.*, No. CIV.A. 14-831, 2014 WL 5810529, at *4 (E.D. La. Nov. 7, 2014) ("The alleged 'straight time for overtime' policy constitutes a 'factual nexus which binds the named plaintiffs and the potential class members together.'"); *Velazquez v. FPS LP*, No. 4:13-CV-1563, 2014 WL 3843639, at *8-9 (S.D. Tex. Aug. 4, 2014) (certifying class of technicians paid straight time for overtime); *Vargas v. Richardson Trident Co.*, No. CIV.A. H-09-1674, 2010 WL 730155, at *6 (S.D. Tex. Feb. 22, 2010) (same); *Bursell v. Tommy's Seafood Steakhouse*, No. CIV.A. H-06-0386, 2006 WL 3227334, at *3 (S.D. Tex. Nov. 3, 2006) (certifying class of restaurant workers paid straight time for overtime); *Carter v. Indianapolis Power & Light Co.*, No. IP102CV01812SEBVSS, 2003 WL 23142183, at *2 (S.D. Ind. Dec. 23, 2003) (certifying a class holding various positions such as supervisors, foremen, and management trainers and were paid overtime at a straight time rate).

## II.    ARGUMENT AND AUTHORITY AS TO SUMPTER'S PROPOSED NOTICE

### A.    Sumpter's Proposed Notice and Notice Procedure Are Appropriate.

In addition to an order conditionally certifying this collective action, Sumpter respectfully requests the Court authorize notice be sent by mail, email, and text message to all Putative Class Members who work or have worked at H+H from September 23, 2019 to the present, and to set the notice period at 60 days. While the FLSA does not expressly require courts to authorize the sending of notice to potential opt-in plaintiffs, the Second Circuit recently recognized that district courts "have discretion, in appropriate cases, to implement [§ 216(b)] . . . by facilitating notice to potential plaintiffs" of the pendency of the action and of their opportunity to opt-in as represented plaintiffs. *Myers*, 624 F.3d at 554.

The methods of distribution proposed by Sumpter are routinely approved by this Court and others in this District (and elsewhere) and should be approved here. *See, e.g.*, *Martin*, 2016 WL 30334, at *19 (approving notice be sent my mail, email, and text message); *Vasto*, 2016 WL 2658172, at *16 (same). "Although email has some potential drawbacks in providing notice, its benefits have led courts to employ notice by email, along with other means, as a standard practice." *Islam v. LX Ave. Bagels, Inc.*, No. 18-CIV-04895-RA-RWL, 2019 WL 5198667, at *11 (S.D.N.Y. Sept. 30, 2019) (finding email "well serves the goal of making 'as many potential plaintiffs as possible aware of this action … in without devolving into a fishing expedition or imposing undue burdens on the defendant'"); *In re Deloitte & Touche, LLP Overtime Litig.*, 11 Civ. 2461 (RMB)(THK), 2012 WL 340114, at *2 (S.D.N.Y. Jan. 17, 2012) (allowing notice by email since "communication through email is the norm"); *Gambino v. Harvard Prot. Servs. LLC*, No. 10 CIV 0983 PAC, 2011 WL 102691, at *2 (S.D.N.Y. Jan. 11, 2011) ("Defendant is directed to produce, in a computer readable format, the names and last known mailing addresses, and alternate addresses, telephone numbers, last known email addresses, and dates of employment . . . ."). Similarly, courts recognize notice by text message furthers the purpose of notice

15

of a collective action under the FLSA.[2] *See Lijun Geng v. Shu Han Ju Rest. II Corp.*, No. 18CV12220PAERWL, 2019 WL 4493429, at *20 (S.D.N.Y. Sept. 9, 2019) (finding notice by mail, email, and text are ordinarily approved); *Martin v. Sprint/United Management Company*, No. 15 Civ. 5237 (PAE), 2016 WL 30334, at *19 (S.D.N.Y. Jan. 4, 2016); *Portilla v. Bridgehampton Stone, Inc.*, No. CV-17-2549-JMA-AYS, 2019 WL 1128364, at *10 (E.D.N.Y. Mar. 12, 2019); *Cabrera v. Stephens*, 16 Civ. 3234 (ADS)(SIL), 2017 WL 4326511 (E.D.N.Y. Sept. 28, 2017) (permitting text and email notice).

And "[t]he weight of caselaw in the Second Circuit has in recent years moved towards approval of reminder notices in light of the remedial purpose of the FLSA." *Brown v. AvalonBay Communities, Inc.*, No. CV 17-6897 (AKT), 2019 WL 1507901, at *13 (E.D.N.Y. Mar. 29, 2019) (collecting cases); *see also Taylor v. R.J.T. Motorist Serv., Inc.*, No. 19-CV-01155 (PMH), 2020 WL 4937483, at *6 (S.D.N.Y. Aug. 24, 2020). This is not surprising "[g]iven that notice under the FLSA is intended to inform as many potential plaintiffs as possible of the collective action and their right to opt-in, we find that a reminder notice [to alert potential plaintiffs that the deadline is coming due] is appropriate." *See Morris v. Lettire Const. Corp.*, 896 F. Supp. 2d 265, 275 (S.D.N.Y. 2012).

Finally, the notice should be posted at H+H's project locations where Putative Class Members work. "Courts routinely approve requests to post notice of conditional certification on employee bulletin boards and in other common areas even where potential members will also be notified by mail." *Hamadou v. Hess Corp.*, 915 F. Supp.2d 651, 669 (S.D.N.Y. 2013); *see e.g.*, *Miranda*, 2017 WL 4712218 , at *3 (permitting mailing and posting of notice).

Attached as **Exhibit 5** is Sumpter's proposed Judicial Notice.  Moreover, attached as **Exhibit 6** are Sumpter's proposed Email Notice and proposed Text Message Notice.  Accordingly, Sumpter respectfully requests that these forms of notice be adopted.

---

[2] *See* Exs. 1-4 at ¶¶ 35.

B.    **A Three-Year Notice Period is Appropriate.**

The FLSA expressly permits a three-year statute of limitations to remedy willful violations of the Act. *See* 29 U.S.C. § 255(a). Courts in this District, including this Court, routinely approves a three-year notice period. *See, e.g., Iglesias-Mendoza v. La Belle Farm, Inc.,* 239 F.R.D. 363, 369 (S.D.N.Y. 2007) ("Where wilfulness [sic] is disputed, the court applies the three-year statute of limitations for purposes of certifying a representative action."); *Vasto,* 2016 WL 2658172, at *16 ("[B]ecause plaintiffs allege willful violations of the FLSA…the Court will approve a three-year limitations period in defining the scope of the collective action."); *Anglada v. Linens 'N Things, Inc.,* No. 06 Civ. 12901 (CM)(LMS), 2007 WL 1552511, at *8 (S.D.N.Y. May 29, 2007) ("[W]here there has been no substantive discovery as to the appropriate temporal scope of the prospective class of member plaintiffs, and where the Plaintiff has alleged a willful violation of the FLSA, it is prudent to certify a broader class of plaintiffs that can be limited subsequently, if appropriate, during the second phase of the collective action certification process."); *see also Fasanelli v. Heartland Brewery, Inc.,* 516 F.Supp.2d 317, 323 (S.D.N.Y.2007) (conditionally certifying class based on three-year period to "avoid any merit-based determinations at this time" but noting the possibility of "decertification at a later time"). Accordingly, a three-year notice period is appropriate.

C.    **The Disclosure of Names and Contact Information is Appropriate.**

To provide potential opt-in plaintiffs with notice of the pendency of this lawsuit, Sumpter requires discovery of the names and contact information for those individuals. "As has been noted by a number of courts in this circuit, courts often grant this kind of request in connection with a conditional certification of an FLSA collective action." *Raniere v. Citigroup Inc.,* 827 F. Supp. 2d 294, 327 (S.D.N.Y. 2011) (listing cases); *Johnson v. Carlo Lizza & Sons Paving, Inc.,* 160 F. Supp. 3d 605, 612 (S.D.N.Y. 2016) (Engelmayer, J.) (ordering "production of the names, addresses, phone numbers, and

17

email addresses of potential opt-in plaintiffs."); *In re Penthouse Executive Club Compensation Litigation*, No. 10 Civ. 1145(NRB), 2010 WL 4340255, at *5 (S.D.N.Y. Oct. 27, 2010) (listing cases).

Accordingly, Sumpter respectfully requests that the Court direct H+H to produce a computer-readable list of the names, last known addresses, telephone numbers, e-mail addresses, work locations, and dates of employment for all Putative Class Members as defined *supra*. *See, e.g., Miranda*, 2017 WL 4712218, at *3 (requiring defendants to produce names, last known addresses, alternative addresses, known telephone numbers, known e-mail addresses, and dates of employment); *Serebryakov*, 181 F. Supp. 3d at 177 (ordering discovery of all names, last known addresses, alternate addresses, telephone numbers, e-mail addresses, dates and locations of employment, positions held, dates of birth and social security numbers); *Kim Man Fan*, 2014 WL 1512034 (requiring production of names, addresses, telephone numbers, and e-mail addresses); *Benavides v. Serenity Spa NY Inc.*, 166 F. Supp. 3d 474, 488 (S.D.N.Y. 2016) ("[c]ourts in this District commonly grant requests for the production of names, mailing addresses, email addresses, telephone numbers, and dates of employment in connection with the conditional certification of a FLSA collective action."); *see also, Zhongle Chen v. Kicho Corp.*, No. 18-CV-7413-PMH-LMS, 2020 WL 1900582, at *16 (S.D.N.Y. Apr. 17, 2020) (directing defendant "to provide Plaintiff's counsel with the names, addresses, telephone numbers, social media handles, and dates of employment for all potential plaintiffs"); *Garcia Ramos v. DNC Food Serv. Corp.*, No. 19-CV-2967 (VSB), 2020 WL 2832776, at *11 (S.D.N.Y. June 1, 2020) (ordering defendants "to produce in electronic form all the names, last known addresses, e-mail addresses, and telephone numbers, including cell phone numbers, of employees in the conditionally certified collective"). This information is necessary to facilitate notice to the recruiters.

## **CONCLUSION**

For the reasons stated herein, Sumpter respectfully requests that the Court: (1) conditionally certify this action as a collective action pursuant to Section 216(b) of the FLSA; (2) order H+H to

provide the names, last known addresses, telephone numbers, e-mail addresses, work locations, and dates of employment of all Putative Class Members; (3) permit Sumpter to distribute notice as provided herein.

Dated: April 28, 2023

Respectfully submitted,

/s/ Andrew W. Dunlap

**Michael A. Josephson**
Texas State Bar No. 24014780
**Andrew W. Dunlap**
Texas State Bar No. 24078444
**Alyssa J. White**
Texas State Bar No. 24073014
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
awhite@mybackwages.com

**AND**

**Richard J. (Rex) Burch**
Texas State Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**AND**

Dana M. Cimera
**FITAPELLI & SCHAFFER, LLP**
Joseph A. Fitapelli
Dana M. Cimera
28 Liberty Street, 30th Floor
New York, NY 10005
Telephone: (212) 300-0375

**ATTORNEYS IN CHARGE FOR PLAINTIFF**

19

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was served on counsel of record for all parties via the Court's CM/ECF filing system on April 28, 2023.

<u>*/s/ Andrew W. Dunlap*</u>
**Andrew W. Dunlap**